Thank you, thank you, good morning your honors, Chief Judge Torea, Judge Kayada, good morning, may it please the court, I am here today on behalf of Mr. Vaughn Lewis and with me is my able compatriot, Zoraida Fernandez. I would ask to reserve three minutes for rebuttal please. You may. Thank you, because the career offender guideline section 4B1.2B does not include conspiracy in the definition of controlled substances offenses, that crime, conspiracy, cannot be either a triggering offense or a predicate offense for the purposes of the career offender guideline. What is the law of the circuit at this point? I would submit to the court that there are many good reasons within the law of the circuit that comport with the law of the circuit doctrine to reach a different result today. Kaiser v. Wilkie, as I said, tells us that deference only arises to agencies interpretations of their regulations when the regulation itself is genuinely ambiguous. Because the career offender guideline defines what controlled substances means for the purposes of the guideline, there is no authority to look to the commentary. Are you saying that we should not look to the commentary in any further instance or in this particular instance? In the case of conspiracy under the career offender guideline, you should not look to the commentary. There are times when the courts can look to the commentary. There might be times when there is genuine ambiguity in the guideline that would warrant interpretation and the guidelines tell us in 1B1.7 when you can look to the commentary when it is needed to interpret or when for a basis for departure or to provide background information. Nowhere is there authority to add to the guidelines substantively, which is what this commentary serves to do. The guideline itself only lists substantive offenses, manufacture, import, export, distribution, possessing with intent to do those things. The language of the guideline is completely unambiguous. It is a finite list defining what a controlled substance means. In Burgess, the U.S., the Supreme Court told us that a meaning which declares what a term means, a definition, I'm sorry, which declares what a term means excludes any meaning not so stated. And the guideline itself lists only substantive offenses. Conspiracy is not one of the enumerated crimes. Generally, the law punishes conspiracy to the same degree that it punishes the principal offense because the law recognizes that one who engages in a conspiracy to do this substantive offense for the purposes of punishment has equal culpability. Well, there is good reason to distinguish between conspiracy and substantive offenses, and that has been pointed out in any number of cases. For example, under the ACCA, it was made clear that conspiracy to commit burglary wasn't a crime of violence. It didn't equal burglary. Under 18 U.S.C. 846, there is no overact requirement. The general conspiracy statute requires that. That is very different than the substantive offenses which require somebody to be an actor. So there are good policy reasons to distinguish between conspiracy and substantive offenses, but the basic, the primary argument that we're making is that the commission does not have the authority, as Kaiser has now made clear, to add to the guidelines. That is, you don't reach any commentary, interpretive commentary, unless there is ambiguity in the guideline, and we submit there is none here. In looking through the guidelines, one thing that captured my attention that I'm not sure the briefs help us on is guideline section 2X1.1, which addresses conspiracy when not covered by a specific offense guideline. And so I'm wondering, what am I missing about that that that doesn't shed some light on this agreement where it's not a commentary, it's guideline? I would say, Your Honor, I have not fully examined that, but where the conspiracy is not listed in the guideline, that is where the conflict comes. There is a conflict between the language of the guideline itself, which lists only substantive offenses, and the commentary. And this commentary goes well beyond what commentary is permitted to do. For example, it says, if you have a conspiracy, but not all the acts that would make the offense final have been completed, then for special offense characteristics, you decrease by three levels. So that seems to be somewhat the sort of argument you're saying in the sense that the guidelines treat conspiracy in this instance not quite with the same degree of severity as it treats the completed underlying offense. But then it doesn't seem to go as far as you would suggest we should read the other guideline section in terms of not just otherwise incorporating conspiracy altogether. I think, I'm not trying to be non-responsive to your point, but I think that Kaiser tells us where there is no ambiguity, there is no role for interpreting. And I don't, I think where there is an unambiguous guideline that lists substantive offenses, as does, by the way, the statutory language authorizing and directing the creation of the guideline, 994H, similarly lists only substantive offenses. It does not list conspiracy, and in, so it lists, 994H lists 21 U.S.C. 841, it lists 21 U.S.C., 21 U.S.C. 841 is manufacture, distribute, dispense, possess with intent. 952A is importation. 955 is bring or possess on a maritime vessel. 959 is manufacture or distribute. These are all substantive offenses. So the statute is clear, 994H is clear for only looking to substantive offenses, and the guideline is also clear. And our tells us, I mean, Kaiser tells us that our deference, and I would submit to the court that this court's precedence looked, gave too much deference to this authority, simply saying we don't find it inconsistent where, in fact, there is inconsistency. And I would submit that the prior court didn't, prior court's, Nieves-Fiore was decided even before Stinson, and it says, in general, will defer to the commission's suggested interpretation. That isn't the rule under Kaiser, and Piper said, remarking on the obvious, conspiracy convictions are not mentioned in the body of either the relevant guideline or the enabling legislation. So recognizing it, but then deferring. But those cases were decided before Burgess, which says that a list that says what a statute means excludes other meanings. That's that Latin phrase that I won't try to report for you today. It was decided before Levante. Excuse me. Do you read the career offender designation as enhancing both the total offense level and the criminal history score? It does. It serves to operate that way, yes. Levante said that when commentary is at odds with 994H's plain language, it must give way. That is the situation here. James says attempted burglary is not the same as burglary for the ACCA. This court decided Soto Rivera and said that without anchoring textual language, there isn't a place for the commentary to add. So that's within this circuit law that says you can't make it up out of whole cloth, which is what this commentary does. It just adds it in, and that is too much. That is not permitted within our. And stepping back, I think there is a way to interpret even before this. There were the Winstead D.C. Circuit has agreed based on previous. It's a more constrained reading of the precedent that says you can't go too far because it's a problem of the constitutional magnitude. Mistretta set out these checks and balances with the sentencing scheme, right? There is a limited authorization to go forth. And there are checks and balances, which include if you're going to write a guideline, which you need to go through the notice and comment process. Commentary does not go through any of that. There is a carefully crafted system here, but you've got to follow the rules for that system not to run afoul. And that's what Kaiser basically says we can pull it back. And if I just might add one further point, Mr. Vaughn Lewis is a very real person who is impacted by this. He was arrested on June 9th, 2016. He has now served 39 months. His guideline calculated without the career offender was 37 to 46 months. So we would ask this court and I will come back and talk further to address rebuttal arguments. But to keep in mind the important timeliness for this for this case. Thank you. Thank you. Good morning. May it please the court. Mark Quinlivan on behalf of the United States. This case is squarely controlled by this court's prior decisions and Fiori, Piper and me. And let me explain why. Yes. Assuming you're right, there are exceptions to that rule. Absolutely. And in this case, the case would seem to lead some validity to that exception. And let me explain why that's not the case. Judge Kizer left in place what is alternatively defined as either our or Seminole Rock deference. In doing so, the court noted that it had applied our and Seminole Rock deference in any number of cases, one of which was Stinson. This court's decision in Piper in turn applied Stinson in holding that conspiracies are that the application note lawfully includes conspiracies within the definition of a controlled substance offense. And what I understand from my friend's reply brief is the argument that he overruled the rationale that Stinson used and that this court applied in Piper. There's suggestions of that, certainly in the reply brief. I'm not sure that's the way I read it, though. Stinson has like anything that deals with ambiguity, whether it has some ambiguity in itself. It can be read broadly. It can be read narrowly. We read it quite broadly in Piper. Kizer seems to me to be saying we're not reversing anything, but we're emphasizing the narrow reading. And where that comes to a head is on the term plainly inconsistent that we grabbed hold of in Piper, which would seem to say that if something says apple, banana, pear, that fruit can be included because fruit wasn't expressly excluded. And it seems Kizer sort of rejects that type of definition of ambiguity and would rather have us say we need to see something in that list that suggests a peach would be included before we can read one in. So there's a difference between not overruling it and clarifying. I understood it, Judge Chiara, and I guess I would have two answers. And the first is that the Supreme Court itself has told the courts what to do in those kinds of situations. I refer to the off-quoted admonition in Agostini v. Felton, that when the decision of the court has direct application in the case, but the rationale of that decision arguably might have been undermined by later decisions, then lower courts must apply the decision on point, leaving it to the Supreme Court to overrule or to call into question. Right, but if we accepted the defendant's argument, we would not be saying that Stinson has been overruled by Kizer. We would simply be saying that we misread Stinson in our case as now explained more fully in Kizer because plainly inconsistent, as we interpreted that phrase, seems to pretty clearly not be what the court is talking about in Kizer. Well, again, two answers, Judge Chiara. First up, I don't think that one can read Stinson in that way because the court defined under what circumstances guidelines commentary would be inconsistent with the text of a guideline, and then said because lower courts have not followed guidelines in situations that go beyond that, we explain the circumstances under which the commentary is binding. And second point, Judge Chiara, because I think that my friend's argument that the guideline text is unambiguous is equally unavailing. And the reason is because what the guideline text says is that crimes that prohibit the manufacture, import, export, or distribution or dispensing of a controlled substance. So the key question is what does the word prohibit mean? And the dictionary definition of prohibit sometimes means to altogether prohibit, but it also can mean to hinder or to make more difficult. And I direct the court's attention to the 11th Circuit's decision and I'll follow later with the citation, but it's United States v. Lange. It's 862 Federal Reporter 3rd at 1290, where the court made this very point that a federal drug conspiracy statute has the effect of hindering the distribution or manufacture of a controlled substance and therefore it's perfectly compatible with the text of the guidelines. If the commission wanted to narrow or to make the list in the text of the guidelines exclusive, it very easily could have defined controlled substance offense to mean, for example, the offenses of manufacturing, export, import, distribution, or dispensing of a controlled substance. But what it said was crimes that prohibit. And I think that in so doing, that undercuts the argument that the text of the guidelines is so unambiguous that you cannot look to the guidelines commentary. And this is entirely consistent with... So unambiguous is clearly not quite the test. The test is, is it plainly ambiguous? I agree, Judge Kayotte. That is precisely the difference between the way we read Stinson, which seemed to be clearly up, and then the way that we're now told in Kaiser to read. And I think, again, I go back to... I don't see under the law of the circuit doctrine and consistent with Agostini how this court can go back and say that all this court did in Piper is quote the exact language that the Supreme Court used in Stinson in saying what are the circumstances in which the guideline commentary is inconsistent with the text of the guidelines. And doesn't Kaiser say that exact same language, plainly inconsistent, can be misleading? And I go back, Judge Kayotte, that we then are in the Agostini versus Felton situation. And I would just emphasize that the defendant's argument here isn't that Kaiser implicates the first exception to the law of the circuit doctrine. It's that it implicates the second exception, which this court has said is hen's teeth rare and is limited to only situations that are... under which a decision would lead the original panel to reach a different conclusion. Let's say you're right on law of the case, circuit precedent. That still leaves pending then whether we should go on bonk. Absolutely. Because then it wouldn't apply. That's right. Which then brings us to focus more directly on is it correct? Is Piper correct or not? Yes. And that goes to the point I was making earlier, Judge Kayotte. On prohibit. About the language of the word prohibit. What about 2X1.1? I'm not seeing why that... I mean, you have a guideline that specifically says that the base offense level for the guideline for the substantive offense plus any adjustments will apply in the case of conspiracy. So why isn't that controlling, at least as to the base offense level? You know, Candor, Judge Kayotte, I haven't looked at that specific guideline. As it applies to this case, I'd be happy to file a letter if that would be helpful. I'm not sure, at least I haven't seen any of the courts that have analyzed this issue that have looked at that guideline. That's not to say that it doesn't inform it, but I can't stand here and say that I've looked at that guideline as it applies in this particular context. Let me just conclude just by, Judge Kayotte, the point that you make. The conclusion that this issue is controlled by the law of the circuit doctrine, of course, leaves the defendant with a remedy. The remedy is to, if this court were to affirm, to seek en banc review for this court, and if en banc review is not granted, to seek certiorari before the Supreme Court. But the law of the circuit doctrine serves important institutional interests, and this is not one of the situations in which either exception to that doctrine has been implicated. I'd be happy to address either of the other issues. Otherwise, we'll rest on our brief. Thank you. Thank you. Ms. Bernstein. Thank you. Very briefly, I would, if I left the impression that I wasn't suggesting that that first exception to the law of the circuit doctrine was not applicable, I clearly do believe that it is, that Kaiser is controlling authority subsequently announced, and therefore that requires a reexamination of circuit precedent. And I think that a review of the cases, Fiore, Piper, Nieves, Barrero, will result in a conclusion that it didn't hew to the limits set forth in Kaiser, which is that you cannot give such broad discretion to interpret. Otherwise, it would de facto be enabling lawmaking. That is the language from Kaiser, and that it cannot do. And that cannot do piece, I think, references quite squarely the constitutional problem of that degree of deference. How often does this issue arise? All the time. I guess I should clarify which issue we're talking about. Well, in other words, Mr. Quinlan, have you just made the point that perhaps this isn't important enough to go en banc if we were to decide that we were bound by the prior? That, in my mind, raises the question, is this a very unusual case, or are there a significant number of cases in which sentences are substantially enhanced because of a conspiracy allegation without any allegation or conviction as to the underlying offense? Yes, I think that was the question I was meant to be answering, and the answer is yes. I mean, anybody who is charged with conspiracy in this court who has two predicates, either crimes of violence or controlled substances offenses, will get enhanced. And as this court well knows, the sentencing judge must start with the guidelines. And that brings you from, in this case, 37 to 46 months to 155 to 151 to 188. It's a huge, and that's really the effect that it has in every case. So it is an important question. I would urge, though, that there is good reason for this court to recognize, as I think you can see at least the argument that we're making, that the prior discretion that was granted in Piper was too broad. And Nieves-Morero, which came after some of that other decisional law, simply, first of all, was reviewing on plain error and simply just said, we've decided this question already. It's not, you know, plainly erroneous. And so that answers the question. There really was not a deep and searching inquiry. And many of the arguments we're presenting now were not presented to that court. Thank you. Thank you.